UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEA BRADLEY,

               Plaintiff,                                         Hon. Richard Alan Enslen

v.                                                    Case No. 5:04-CV-206

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years of age at the time of the ALJ's decision.  (Tr. 34, 70).  She successfully completed high school and worked previously as a dietary aide, nurse's aide, and cook. (Tr. 29, 95-96, 189-90).

Plaintiff applied for benefits on January 18, 2002, alleging that she had been disabled since April 21, 2000, due to back pain.  (Tr. 70-72, 81).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 37-69).  On June 17, 2003, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, Paul Delmar.  (Tr. 181-222).  In a written decision dated November 26, 2003, the ALJ determined that Plaintiff was not disabled.  (Tr. 28-34).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

Plaintiff testified that she fell in October 1999, injuring her back.  (Tr. 191).  The record contains no medical records contemporaneous with this incident.  Plaintiff testified that she fell again in April 2000.  *Id.*

3

On April 14, 2000, Plaintiff participated in a CT scan of her lumbar spine, the results of which revealed "moderate caudal sac stenosis at the L4-5 disc level, worse on the left side of midline. Bulging of L4-5 disc encroaches on left L4 foraminal space. Milder disc bulging at L2-3 and L3-4 levels." (Tr. 144).

On June 14, 2000, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "moderate" degenerative disc disease at L1-2, "moderate-severe" degenerative changes at L2-3, "minimal" degenerative changes at L3-4, and "mild" degenerative changes at L4-5. (Tr. 145).

On June 27, 2000, Dr. Saeed Farhat reported that Plaintiff should be treated with conservative methods such as epidural steroid injections. (Tr. 143). Plaintiff received three such injections between August 2000 and March 2001. (Tr. 139).

On March 1, 2001, Plaintiff was examined by Dr. Carmen Green. (Tr. 141-42). Plaintiff reported that she was experiencing "chronic" low back pain which radiated into her left leg. (Tr. 141). She rated her pain as 9 on a scale of 1-10, but the doctor reported that Plaintiff "appears more comfortable than her pain score." (Tr. 141). Plaintiff exhibited a "good" and "improved" gait. The results of a physical examination were unremarkable. *Id.*

On April 5, 2001, Plaintiff was examined by Dr. Green. (Tr. 139-40). Plaintiff reported that she was experiencing "persistent" low back pain which radiated into her left leg. (Tr. 139). She rated her pain as 8-10 on a scale of 1-10. On examination, however, Plaintiff was in "no acute distress" and was "able to walk without difficulty." Plaintiff exhibited "limited" range of motion in her lumbar spine, but demonstrated "adequate" strength. Dr. Green recommended that Plaintiff receive another epidural steroid injection. *Id.*

4

On June 14, 2001, Plaintiff was examined by Dr. Green. (Tr. 137-38). Plaintiff reported that she was experiencing "persistent" low back pain which radiated into her left leg. (Tr. 137). She rated her pain as 7-8 (on a scale of 1-10), but the doctor reported that Plaintiff was in "no acute distress." On examination, Plaintiff was "able to walk without difficulty" and exhibited "normal" strength in both her lower extremities. She exhibited "limited" range of motion in her lumbar spine. *Id.*

On October 18, 2001, Plaintiff received a right-sided sacroiliac joint injection. (Tr. 115-16).

On December 21, 2001, Plaintiff was examined by Dr. Green. (Tr. 133-34). Plaintiff reported that following her right-sided sacroiliac joint injection she experienced a 75 percent reduction in pain on the right side of her lower back. (Tr. 133). Plaintiff also reported, however, that the pain on her left side had increased and presently rated as 9 on a scale of 1-10. Plaintiff reported that her pain is relieved by taking her medication and changing her body position. Plaintiff walked with an antalgic gait, but exhibited full range of motion in her lumbosacral spine and full strength in her lower extremities. A neurological examination revealed "mild" hyperesthesia in Plaintiff's left lower extremity, but was otherwise unremarkable. *Id.*

On January 17, 2002, Plaintiff received a nerve block injection to treat her left-sided lower back pain. (Tr. 113-14). Plaintiff later reported that this treatment provided her with a 50 percent reduction in pain. (Tr. 111).

On April 4, 2002, Plaintiff was examined by Dr. Green. (Tr. 167-68). Plaintiff reported that her pain had "improved significantly" and presently rated 1-2 on a scale of 1-10. (Tr.

167).  Plaintiff exhibited "somewhat" reduced strength in her right lower extremity, but she was able to stand on her heels and toes and Lasegue's sign[1] was negative.  *Id.*

On May 30, 2002, Plaintiff was examined by Dr. Green.  (Tr. 163-64).  The doctor observed tenderness to palpation in Plaintiff's paravertebral musculature, but she was in no acute distress.  (Tr. 163).  Plaintiff was able to heel/toe walk "without any difficulty" and she exhibited "good muscle control."  Straight leg raising was negative and Plaintiff exhibited normal strength in her lower extremities.  *Id.*

On November 21, 2002, Plaintiff was examined by Dr. Green.  (Tr. 159-60).  Plaintiff reported experiencing back pain which rated 7-10 on a scale of 1-10.  (Tr. 159).  Plaintiff exhibited reduced range of motion in her lumbar spine and straight leg raising was positive.  (Tr. 160).  She did not exhibit "any type of distress" and was able to heel/toe walk without difficulty.  (Tr. 159-60).  She was able to get on the examination table with only "mild" difficulty.  (Tr. 160).  Plaintiff demonstrated full strength in her lower extremities.  *Id.*

On February 20, 2003, Plaintiff was examined by Dr. Vildan Mullin.  (Tr. 157-58).  Plaintiff was in no acute distress and was able to ambulate "without any difficulty."  (Tr. 157).  Plaintiff was able to heel/toe walk "without any difficulty" and the doctor observed no neurosensory changes from Plaintiff's previous examinations.  (Tr. 157-58).

At the administrative hearing Plaintiff testified that due to her back pain she "can't even do housework or anything."  (Tr. 196-97).  She testified that if she lifts her right arm she experiences "shooting pains" down her right side.  (Tr. 197).  Plaintiff reported that she is unable to

---

[1] Lasegue's sign is a sign which is present in several abnormal conditions, such as a disorder in the lower vertebrae of the spine, meningitis, and sciatica.  J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* L-42 (Matthew Bender) (1996).

6

bend over and, therefore, cannot put on her shoes or pants.  (Tr. 203).  Plaintiff testified that her medications help her "some" and do not produce any side effects.  (Tr. 201-02).  Plaintiff reported that she can stand/walk for 15-20 minutes, but was unsure how long she can sit at one time.  (Tr. 202-03).  She reported that she can lift a gallon of milk.  (Tr. 203).

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1420(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B.  The ALJ's Decision**

The ALJ found that Plaintiff suffers from the following severe impairments: scoliosis and degenerative disc disease of the lumbar spine.  (Tr. 30).  The ALJ determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 30-31).  The ALJ further determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations.  (Tr. 31-33).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1.  The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

8

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following restrictions: (1) no lifting more than 10 pounds, (2) she can stand/walk up to two hours during an 8-hour workday, (3) she can sit for at least 6 hours during an 8-hour workday, (4) she requires a sit/stand option, (5) she can only occasionally perform pushing, pulling, or overhead reaching activities with her upper extremities, (6) she cannot climb ladders, ropes, or scaffolds, and (7) she can only occasionally stoop, kneel, crouch, crawl, bend, twist, turn, or climb stairs/ramps. (Tr. 31). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could no longer perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

9

The vocational expert testified that there existed approximately 22,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 216-19).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a.   The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's subjective allegations of pain and limitation were "not completely credible."  (Tr. 32).  Plaintiff counters that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

10

> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly observed, while the objective medical evidence reveals that Plaintiff suffers from severe impairments, Plaintiff "has not undergone any surgical intervention" and her "treatment has been somewhat sporadic." As the ALJ concluded, Plaintiff "has not generally received the medical treatment one would expect for a totally disabled individual." As the ALJ also correctly observed, Plaintiff's activities, while limited, do not support the conclusion that she is unable to perform any and all work activities. The record also contains evidence that Plaintiff has exaggerated her symptoms. Finally, there is no indication in the record that any of Plaintiff's care providers have imposed on her limitations which are inconsistent with the ALJ's RFC. In sum, there exists substantial evidence to support the ALJ's credibility determination.

### b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 22,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

c.   Plaintiff is not Entitled to a Remand in this Matter

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ.  (Tr. 175-80).  The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination.  (Tr. 5-8).  Plaintiff has also submitted to this Court additional evidence which was neither presented to the ALJ nor the Appeals Council.  (Dkt. #7).

This Court, however, is precluded from considering such material.  *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered.  *Id.*  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence.  *See Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of several items.  On February 16, 2004, Plaintiff participated in an electrodiagnostic study, the results of which revealed evidence of a "mild" median neuropathy and focal demyelination without axonal loss.  (Tr. 179).  The examination also revealed, however, no evidence of radial or ulnar neuropathy, cervical radiculopathy, brachial plexopathy, or nerve root injury.  (Tr. 179-80).  The doctor who administered this examination reported that Plaintiff would benefit from physical therapy.  (Tr. 180).

On February 19, 2004, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed multilevel spinal stenosis.  (Dkt. #7 at 6-7).  An MRI

examination of Plaintiff's lumbar spine, performed the same day, revealed diffuse disc bulging and "mild to moderate" stenosis. (Dkt. #7 at 4-5). X-rays of Plaintiff's lumbar and cervical spine, taken the same day, revealed diminished lordosis and the presence of rotoscoliosis. (Dkt. #7 at 2-3). On March 25, 2004, Plaintiff participated in a CT scan of her cervical spine, the results of which revealed diminished lordosis and disc space narrowing. (Tr. 176).

This evidence simply reiterates what the ALJ properly concluded - while Plaintiff suffers from severe impairments which impose significant limitations on her ability to function, the medical evidence does not support the conclusion that she is unable to perform *any* work activities. In sum, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

As articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                        Respectfully submitted,


Date:  December 16, 2005                  _/s/ Ellen S. Carmody_____
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge

15